1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

VERONICA MCMILLIN,                                    3:15-cv-00222-HDM-VPC

                           Plaintiff,

  v.

CAROLYN W. COLVIN,                                    **REPORT AND RECOMMENDATION**
Acting Commissioner of Social Security,          **OF U.S. MAGISTRATE JUDGE**

                     Defendant.

      This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge.   The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.   Before the court is plaintiff's motion for reversal and/or remand (#10) and defendant's opposition and cross-motion to affirm (#s 11/12). Plaintiff did not file a reply.   For the reasons set forth herein, the court recommends that plaintiff's motion be granted, and defendant's cross-motion be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

      On March 25, 2010, Veronica McMillin ("plaintiff") protectively filed for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of July 19, 2008.  (Administrative Record ("AR") 153–56.)   The Social Security Administration denied plaintiff's application in the first instance on May 10, 2010, and upon reconsideration on July 22, 2010.  (*Id.* at 77–80, 82–84.)

      On October 19, 2011, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison.  (*Id.* at 45–72.)  Carly Caughlin, a vocational expert ("VE"), also appeared at the hearing.  (*Id.*)   The ALJ issued a written decision on November 10, 2011, finding that plaintiff had not been disabled at any time between the alleged onset date and the date of the decision.  (*Id.* at 23–38.)  Plaintiff appealed, and the Appeals Council denied review on June 6, 2013.  (*Id.* at 1–7.)

1    Plaintiff filed a complaint for judicial review on August 22, 2013.  (*Id.* at 497–510).

2    Pursuant to the parties' stipulation, this court remanded for further administrative proceedings.

3    (*Id.* at 516–17.)   The ALJ was instructed on remand to "identify and resolve any conflicts

4    between the occupational evidence provided by the vocational expert and information in the

5    Dictionary of Occupational Titles ("DOT")," among other tasks.  (*Id.*)  A second administrative

6    hearing was conducted on January 13, 2015.  (*Id.* at 453–96.)   ALJ Burlison presided, and

7    plaintiff, her attorney, and VE Jacklyn Benson-DeHaan were present.  (*Id.*)  The ALJ issued a

8    second decision on January 28, 2015, and again found plaintiff not disabled.  (*Id.* at 436–46.)  The

9    ALJ's decision became the final decision of the Commissioner ("defendant").

10    Plaintiff filed a complaint seeking judicial review of the ALJ's second decision on April

11    25, 2015.  (#1.)  Plaintiff contends that the ALJ erred at steps four and five of the disability

12    determination by impermissibly relying on inadequate VE testimony, and asks this court to

13    reverse defendant's decision and remand the matter to the ALJ.  (#10 at 5–11.)

## II.    STANDARD OF REVIEW

15    The initial burden of proof to establish disability in a claim for SSDI benefits rests upon

16    the claimant.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To satisfy this burden, the

17    claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

18    any medically determinable physical or mental impairment which can be expected . . . to last for a

19    continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

20    This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after

21    the claimant has exhausted all administrative remedies.  *See Brewes v. Comm'r of Soc. Sec.*

22    *Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012).  The court must affirm the ALJ's decision

23    unless it rests on legal error or is unsupported by substantial evidence in the administrative

24    record.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g)

25    ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

26    evidence, shall be conclusive.").  The substantial evidence standard is not onerous.  It is "more

27    than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

28

1    mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th

2    Cir. 2012) (internal quotation omitted).

3         Although the ALJ need not discuss every piece of evidence in the record, she cannot

4    ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th

5    Cir. 2012). The ALJ's discussion must adequately explain the decision in light of such evidence.

6    "The ALJ, not the district court, is required to provide specific reasons for rejecting [the

7    evidence.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

8    discussing rejection of lay testimony). The district court's review is thus constrained to the

9    reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

10        To determine whether substantial evidence exists, the court must look at the record as a

11   whole, considering both evidence that supports and undermines the ALJ's decision; it "may not

12   affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

13   *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted). Where "the evidence is

14   susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."

15   *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted). The ALJ alone is

16   responsible for determining credibility and resolving ambiguities. *Garrison*, 759 F.3d at 1010.

## III.    DISCUSSION

### A.    SSDI claims are evaluated under a five-step sequential process.

19        The Commissioner follows a five-step sequential process for determining whether a

20   claimant is "disabled" for the purposes of SSDI. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v.*

21   *Thomas*, 540 U.S. 20, 24 (2003). Step one directs the ALJ to determine whether the claimant is

22   engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not

23   disabled and the Commissioner denies the claim. *Id.* § 404.1520(b).

24        The second step requires the ALJ to determine whether the claimant's medically

25   determinable impairment is "severe." *Id.* § 404.1520(a)(4)(ii). "Severe" impairments are those

26   that significantly limit the claimant's physical or mental ability to do basic work activities. *Id.* §

27   404.1520(c). The Commissioner will deny the claim if the claimant lacks a severe impairment or

28   combination of impairments. *Id.*

1    At step three, the claimant's impairment is compared to those listed in the Social Security

2    Regulations at 20 C.F.R. Pt. 404, Subpart P, Appendix 1.  *Id*. § 404.1520(a)(4)(iii).  The list in

3    Appendix 1 "define[s] impairments that would prevent an adult, regardless of his [or her] age,

4    education, or work experience, from performing *any* gainful activity, not just substantial gainful

5    activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation omitted) (emphasis in

6    original).  Where the claimant's impairment is on the list, or is equivalent to a listed impairment,

7    and the claimant also meets the corresponding durational requirement, the claimant is deemed

8    disabled.  20 C.F.R. § 404.1520(d).  However, for an impairment to match a listing, "it must meet

9    *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no

10   matter how severely, does not qualify."  *Zebley*, 493 U.S. at 530 (emphasis in original).

11    If the Commissioner does not find disability at step three, review of the claim proceeds to

12   step four.  There, the ALJ considers whether the claimant can perform past relevant work despite

13   the severe impairment.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled.  *Id*. §

14   404.1520(e).  The ALJ will find that the claimant can return to past relevant work if he or she can

15   perform the "actual functional demands and job duties of a particular past relevant job" or the

16   "functional demands and job duties of the [past] occupation as generally required by employers

17   throughout the national economy."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)

18   (internal quotation omitted).

19    In making the step four determination, the ALJ considers the claimant's residual

20   functional capacity ("RFC") and the physical and mental demands of the work previously

21   performed.  20 C.F.R. § 404.1520(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir.

22   2010).  The RFC is the most the claimant can do despite his or her limitations.  20 C.F.R. §

23   404.1545(a)(1).  To determine the claimant's RFC, the ALJ must assess all the evidence,

24   including medical reports and descriptions by the claimant and others of the claimant's relevant

25   limitations.  *See id*. § 404.1545(a)(3).  The ALJ is not, however, required to accept as true every

26   allegation the claimant offers regarding his or her limitations.  *Orn v. Astrue*, 495 F.3d 625, 635

27   (9th Cir. 2007).  The ALJ must follow a two-prong inquiry where the claimant alleges subjective

28   pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR

1    96-7p, 61 Fed. Reg. 34483 (July 2, 1996).  First, the ALJ determines "whether the claimant has

2    presented objective medical evidence of an underlying impairment which could reasonably be

3    expected to produce the pain or other symptoms alleged."  *Lingenfelter*, 504 F.3d at 1036

4    (internal quotation omitted).  Second, if the first prong is met and no evidence suggests that the

5    claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear

6    and convincing" reasons for doing so.  *Id*.

7         The "clear and convincing" standard is the most demanding standard in Social Security

8    case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the

9    testimony she or he finds not to be credible and [to] explain what evidence undermines the

10   testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  The ALJ must therefore

11   cite to the record and discuss specific evidence therein.  *See Vasquez v. Astrue*, 572 F.3d 586,

12   591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ

13   may consider a variety of factors in weighing a claimant's credibility, including inconsistencies in

14   a claimant's testimony, his or her reputation for truthfulness, an inadequately explained failure to

15   seek treatment, or a lack of support from the medical evidence.  20 C.F.R. § 404.1529(c); *Orn*,

16   495 F.3d at 636.  The focus, however, is ultimately upon the reviewing court.  The credibility

17   determination must be "'sufficiently specific to allow a reviewing court to conclude the ALJ

18   rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the

19   claimant's testimony.'"  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v.

20   Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

21        If step four demonstrates that the claimant cannot do the work he or she did in the past, the

22   burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs

23   available in the national economy.  20 C.F.R. § 404.1560(c).  There, the ALJ must consider the

24   claimant's RFC, age, education, and past work experience to determine whether the claimant can

25   do other work.  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071,

26   1075 (9th Cir. 2007).  The ALJ will typically reference "the grids," under which a finding of

27   disability may be directed, and also consider the testimony of a VE.  *Tackett v. Apfel*, 180 F.3d

28   1094, 1101 (9th Cir. 1999).  Where the grids do not direct a finding of disability, the ALJ must

1    identify other jobs that the claimant can perform and which are available in significant numbers in

2    the claimant's region or in several regions of the United States.  42 U.S.C. § 423(d)(2)(A); 20

3    C.F.R. § 404.1560(c).  If the ALJ establishes that the claimant's RFC and transferable skills allow

4    him or her to perform other occupations, the claimant is not disabled.  20 C.F.R. § 404.1566.

5    Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is

6    disabled and entitled to benefits.  *Id*. § 404.1520(g).

7    **B.      The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

8            In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process

9    described above.  The ALJ first determined that plaintiff did not engage in substantial gainful

10   activity from July 19, 2008, the alleged onset date, through December 31, 2013, the date plaintiff

11   was last insured.  (AR 438.)   At step two, the ALJ found that plaintiff's fibromyalgia and

12   incontinence were severe impairments that significantly limited her ability to perform basic-work

13   related functions.  (*Id.*)  The ALJ also considered evidence in the record regarding carpal tunnel

14   syndrome, disc herniation with compression, abdominal/susternal chest pain, depression, and

15   anxiety, but found none of those conditions to be severe.  (*Id.* at 438–40.)  At step three, the ALJ

16   found that plaintiff did not have an impairment or combination of impairments that met or

17   medically equaled the severity of any listed impairment.  (*Id.* at 440.)

18           The ALJ proceeded to step four and made several findings.  To begin, the ALJ concluded

19   that plaintiff's RFC through the date last insured permitted her to perform sedentary work as

20   defined by 20 C.F.R. § 404.1567(a), except that she would be limited to occasional postural

21   activities; she should avoid hazards, including heights and operating dangerous or moving

22   machinery; she required a sit/stand option as needed, and access to a restroom in the building; and

23   she would be off-task or away from her workstation for up to five minutes each hour.  (*Id.* at

24   441.)  In so concluding, the ALJ found that plaintiff's impairments could be expected to cause the

25   symptoms alleged, but that plaintiff's statements regarding the intensity, persistence, and limiting

26   effects of those symptoms were not entirely credible.  (*Id*. at 442.)  As the basis for the adverse

27   credibility finding, the ALJ cited a lack of strong support from the objective medical evidence

28   and inconsistencies between plaintiff's allegations and her reported activities.  (*Id.* at 442–43.)

1    Finally, based on the evidence in the record and the testimony of the VE, the ALJ concluded that

2    plaintiff was capable of performing her past relevant work as an accounting clerk and insurance

3    clerk.  (*Id.* at 444.)

4         A claimant is deemed not disabled at step four if capable of performing past relevant

5    work.  20 C.F.R. §§ 404.1560(b)(3).  Nevertheless, the ALJ proceeded to step five and made an

6    alternative finding.   Relying on the testimony of the VE, and considering plaintiff's age,

7    education, work experience, and RFC, the ALJ identified three additional jobs that plaintiff could

8    perform: a document preparer, of which there are 47,000 jobs nationally; an addresser, of which

9    there are 18,000 jobs nationally; and a tube operator, of which there are 17,000 jobs nationally.

10   (AR 445.)  Accordingly, the ALJ held that plaintiff was not disabled and denied her claim for

11   benefits.  (*Id.* at 446.)

12   **C.    The VE's testimony conflicted with the DOT, and the ALJ erred by failing to resolve
          the conflict.**

13

14        The sole basis for the present appeal concerns the VE's testimony at the plaintiff's

15   administrative hearing, held on January 13, 2015.  Plaintiff contends that there is a conflict

16   between her assessed RFC and the DOT's descriptions of the jobs the VE said she could perform.

17   (#10 at 6–8.)  Because the ALJ did not inquire into the conflict, and the VE did not explain the

18   basis for her conclusion, the ALJ's reliance on the VE's testimony constitutes reversible error.

19   (*Id.* at 9–10.)  In opposition, defendant maintains that the ALJ did question the VE about the

20   apparent conflict.  (#11 at 3–5.)  In so arguing, defendant inexplicably cites to and quotes the

21   transcript of the first administrative hearing, held on October 19, 2011.  (*See id.*)

22        Pursuant to Social Security Ruling[1] ("SSR") 00-4p, the DOT is the Social Security

23   Administration's primary source of information regarding the requirements of work in the

24   national economy.   2000 WL 1898704, at *2 (Dec. 4, 2000).   In administrative hearings,

25   however, ALJs will also rely on VEs, who are able to provide additional evidence to help

26   "resolve complex vocational issues."  *Id.*  VE testimony "generally should be consistent with the

27

28   [1] "Social Security Rulings reflect the official interpretation of the Social Security Administration
     and are entitled to some deference as long as they are consistent with the Social Security Act and
     regulations."  *Massachi*, 486 F.3d at 1152 n.6 (internal quotation omitted).

occupational information supplied by the DOT," but, where a conflict exists, neither the DOT nor the VE evidence "automatically 'trumps.'"  *Id.*  Instead, the ALJ has an affirmative duty to resolve the conflict by soliciting "a reasonable explanation" from the VE, and, in light of that explanation, determining whether reliance on the VE testimony rather than the DOT is warranted. *Id.*; *see also Massachi v. Astrue*, 486 F.3d 1149, 1152–54 (9th Cir. 2007).  Where the ALJ fails to follow this procedural requirement, the correct course is to remand for further proceedings, unless the ALJ's error was harmless.  *See Massachi*, 486 F.3d at 1154, 1154 n.19.

During the second administrative hearing, the ALJ presented the following hypothetical to the VE:

> [W]e are looking here at a level of work which from the previous hearing I gave her a sedentary level of work and I allowed a sit[/]stand option at will.  In other words, when she needs to sit and stand she can do so . . . .  Further, that she, her posturals should probably be occasional due to the pain, and her, she should avoid hazards, which would be working at heights, operating dangerous moving machinery.  Now she also needs proximity to a restroom, okay. . . . [S]he, undoubtedly, has some skills, so I would not limit her to simple routine [tasks]. . . .

(AR 487.)  The VE testified that the hypothetical individual could perform plaintiff's past relevant work as an accounting clerk and insurance clerk, and also that the individual could perform the work of a document preparer, addresser, or tube operator.  (*Id.* at 488, 491–92.)  The VE acknowledged that the DOT did not discuss job requirements pertaining to restroom breaks, but said that in her "professional opinion" employers will tolerate an individual who needs to use the restroom for five to ten minutes on an hourly basis.  (*Id.* at 493.)  When asked whether the alternate jobs would allow a sit/stand option, the VE simply said, "Yes."  (*Id.* at 492.)  The ALJ did not ask the VE to elaborate, nor did she ask inquire into potential inconsistencies with the DOT.[2]  (*See id.* at 485–96.)  Thus, the question for the court is whether a conflict existed, and if so, whether the ALJ's failure to make the SSR 00-4p inquiry was harmless.

_____

[2] In her decision, the ALJ wrote: "The [VE] testified [that] the [DOT] does not include an option to alternate between sitting and standing and it does not address proximity to a restroom. Therefore, the [VE] testified in reliance on her professional experience when determining the above jobs could be performed with all the limitations in the [RFC]. I find the vocational expert's explanation is reasonable and reliable pursuant to SSR 00-4p." (AR 446.)  Yet, the ALJ did not cite, and the court has not found, the portion of the second hearing's transcript in which the VE

1    The DOT does not discuss the availability of a sit/stand option for any of its occupations,

2  *McLaughlin v. Colvin*, No. CV 14-9908-PLA, 2015 WL 5567755, at *4 (C.D. Cal. Sept. 22,

3  2015), and courts within this circuit are split on the effect of its silence, *Henderson v. Colvin*, No.

4  1:14-cv-01161-LJO-SKO, 2016 WL 145571, at *11 (E.D. Cal. Jan. 12, 2016).   Some courts take

5  the view that a conflict requires two opposing facts, and that, where the DOT is silent as to a

6  particular requirement, VE testimony supplements the more general DOT descriptions.   *See, e.g.,*

7  *Cortez v. Colvin,* No. 2:13–cv–01496–APG–VCF, 2014 WL 3734308, at *2 (D. Nev. July 28,

8  2014).   Others reach the opposite conclusion, either due to the particular facts of the case, *see,*

9  *e.g.*, *McLaughlin*, 2015 WL 5567755, at *5 (finding a conflict with the DOT where the claimant

10  was capable of just sedentary work, required a sit/stand option as needed, and used a cane to stand

11  or walk); *McCabe v. Colvin*, No. 3:14–cv–00396–LRH, 2015 WL 4740509, at *12 (D. Nev. Aug.

12  10, 2015) (finding a conflict between a telephone quotation clerk job, described in the DOT as

13  sedentary work, and the need for a sit/stand option), or as a more general principle, *see*

14  *Valenzuela v. Astrue*, No. C 08–04001 WHA, 2009 WL 1537876, at *4 (N.D. Cal. June 2, 2009)

15  ("[A] conflict may exist even if VE testimony did not directly contradict DOT information.   Any

16  potential inconsistency . . . is sufficient to warrant inquiry.").

17    Defendant stated, in a footnote, that "[t]he Commissioner does not concede that the

18  DOT's silence regarding the availability of a sit/stand option constitutes a conflict."   (#11 at 4

19  n.2.)   However, believing the issue to be moot, defendant offered no further argument.   (*Id.*)   In

20  light of this omission, and having considered the cases cited in the briefing, the court is persuaded

21  that an apparent conflict arises where, as here, a VE testifies that certain sedentary jobs will the

22  claimant to sit or stand as needed.   Accordingly, the ALJ erred by failing to inquire after a

23  reasonable justification for the VE's testimony.

24    The ALJ's "procedural error could have been harmless, were there no conflict, or if the

25  vocational expert had provided sufficient support for her conclusion so as to justify any potential

26  conflicts . . . ."   *Massachi*, 486 F.3d at 1154 n.19.   For example, in *Buckner-Larkin v. Astrue*, 450

27

28  explained the basis for her opinion as to the sit/stand requirement.   Defendant's citations direct
the court to the transcript of the first hearing, which is not relevant to this appeal. (*See* #11.)

1    Fed. App'x 626, 629 (9th Cir. 2011), the Ninth Circuit found that the ALJ's error was rendered

2    harmless when the VE explained that he had based his determination on labor market surveys, his

3    experience, and research.  Here, in contrast, the VE did not explain why she believed plaintiff

4    could perform her past relevant work and the alternate jobs with the added limitation of a sit/stand

5    option.  In the absence of such an explanation, the court cannot find that the ALJ's disability

6    determination, made in reliance on the VE's testimony, was based on substantial evidence.

7                                    **IV.    CONCLUSION**

8           For the foregoing reasons, the court recommends that this matter be remanded to the ALJ

9    to address and resolve the apparent conflict between the VE's testimony and the DOT.

10          1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file

11   specific written objections to this Report and Recommendation within fourteen days of receipt.

12   These objections should be entitled "Objections to Magistrate Judge's Report and

13   Recommendation" and should be accompanied by points and authorities for consideration by the

14   District Court.

15          2.      This Report and Recommendation is not an appealable order and any notice of

16   appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

17   judgment.

18                                   **V.    RECOMMENDATION**

19          **IT IS THEREFORE RECOMMENDED** that plaintiff's motion for reversal and/or

20   remand (#10) be **GRANTED** and the matter be remanded to the ALJ for further proceedings

21   consistent with this decision;

22          **IT IS FURTHER RECOMMENDED** that defendant's cross-motion (#11) be **DENIED;**

23          **IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close

24   this case.

25   **DATED**: March 22, 2016.

26                                                    _____

27                                                    **UNITED STATES MAGISTRATE JUDGE**

28